UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC FEW,<br><br>            Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | No.  2:19-cv-1491-KJN<br><br>ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 15, 17) |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying him Disability Insurance Benefits under Title II of the Social Security Act.[1]  In his summary judgment motion, plaintiff contends the Administrative Law Judge erred in:  assessing the severity of his mental impairments; formulating his residual functional capacity; determining the number of other jobs available to him; and discounting his subjective-symptom testimony.  The Commissioner filed a cross-motion for summary judgment, arguing the decision is supported by substantial evidence and free from legal error.  Upon consideration of the record and briefing, the court GRANTS plaintiff's motion for summary judgment, DENIES the Commissioner's cross-motion for summary judgment, and REMANDS for further proceedings.

---

[1] This action was referred to the undersigned pursuant to 28 U.S.C. § 636 and Local Rule 302(c)(15).  Both parties consented to proceed before a United States Magistrate Judge, and the case was reassigned to the undersigned for all purposes. (ECF Nos. 7, 16, 19.)

**I.      RELEVANT LAW**

The Social Security Act provides benefits for qualifying individuals with disabilities. Disability is defined, in part, as an inability to "engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. § 423(d)(1)(a).  An ALJ is to follow a five-step sequence when evaluating an applicant's eligibility for benefits.[2]  20 C.F.R. § 404.1520(a)(4).

A district court may reverse the agency's decision only if the ALJ's decision "contains legal error or is not supported by substantial evidence."  Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020).  Substantial evidence is more than a mere scintilla, but less than a preponderance, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The court reviews the record as a whole, including evidence that both supports and detracts from the ALJ's conclusion.  Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018).  However, the court may only review the reasons provided by the ALJ in the decision, and may not affirm on a ground upon which the ALJ did not rely.  Id.  "[T]he ALJ must provide sufficient reasoning that allows [the court] to perform [a] review."  Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).

The ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Ford, 950 F.3d at 1154.  Where evidence is susceptible to more than one rational interpretation, the ALJ's conclusion "must be upheld."  Id.  Further, the court may not reverse the ALJ's decision on account of harmless error.  Id.

---

[2] The sequential evaluation is summarized as follows:
   **Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled.  If not, proceed to step two.
   **Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
   **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled.  If not, proceed to step four.
   **Step four**: Is the claimant capable of performing past relevant work? If so, the claimant is not disabled.  If not, proceed to step five.
   **Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  The burden of proof rests with the claimant through step four, and with the Commissioner at step five.  Ford, 950 F.3d at 1148.

## II.     BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS

On February 24, 2016, plaintiff applied for Disability Insurance Benefits, alleging an onset date of December 1, 2011—which he later amended to January 1, 2012. (Administrative Transcript ("AT"[3]) 175, 280.) Plaintiff's application was denied initially and again upon reconsideration. (AT 72, 86, 104-09, 111-16.) Plaintiff, aided by an attorney, sought review of these denials with an Administrative Law Judge ("ALJ"). The ALJ held a hearing on February 15, 2018, at which both plaintiff and a Vocational Expert ("VE") testified. (AT 45-71.)

On June 20, 2018, the ALJ issued a decision that plaintiff was not disabled from his amended onset date through March 31, 2016, his date last insured. (AT 22-33.) At step one, the ALJ concluded plaintiff had not engaged in substantial gainful activity since his amended onset date of January 1, 2012. (Id.) At step two, the ALJ determined that plaintiff had the following severe impairments: lumbar spine degenerative disc disease, neuropathy, scoliosis, L2 compression fracture, bilateral quadriceps tendinitis, and obesity. (Id.) As relevant here, the ALJ simultaneously found that plaintiff's alleged psychiatric impairments from depression, insomnia, and anxiety were not severe. (AT 26-28.) At step three, the ALJ determined plaintiff's impairments did not meet or medically equal the severity of an impairment listed in Appendix 1. (AT 28-29) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1).

The ALJ then found plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

> he could have occasionally stooped, knelt, crouched, crawled, and climbed stairs; he must have avoided hazards such as unprotected heights and dangerous moving machinery; . . . he was unable to ambulate uneven terrain; and he could have occasionally handled and fingered.

(AT 29.)

At step four, based on the VE's testimony, the ALJ found that plaintiff was not capable of performing his past relevant work as a self-employed tile setter, and that he had no transferrable skills from that work. (AT 31-32.) However, at step five, with further VE testimony, the ALJ

---
[3] The AT is electronically filed at ECF No. 10.

3

found there were still a significant number of jobs available to plaintiff in the national economy in representative occupations such as: investigator of dealer accounts, school bus monitor, and usher. (AT 32-33.) Thus, the ALJ determined plaintiff was not disabled. (Id.) The Appeals Council denied plaintiff's request for review on June 4, 2019 (AT 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff then filed this action requesting judicial review of the Commissioner's final decision; and the parties filed cross-motions for summary judgment. (ECF Nos. 1, 15, 17.)

## III. ISSUES PRESENTED

Plaintiff argues the ALJ erred by (1) concluding at step two that plaintiff's mental impairments were not severe, (2) omitting a "reaching" limitation from the RFC and the hypothetical posed to the VE, (3) concluding at step five that other work was available to plaintiff in "significant numbers" in the national economy, and (4) discounting the testimony of plaintiff and his family members. (ECF No. 15 at 5-13.) The court concludes that the ALJ reversibly erred by finding plaintiff's well-documented depression and anxiety not severe at step two, and that substantial evidence does not support the ALJ's step-five determination on the availability of other work. Because remand is required based on these errors alone, the court does not rule on the remaining issues.

## IV. DISCUSSION

### A. Step Two Severity of Mental Impairment
### Legal Standard

"At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987)). Under the Commissioner's regulations, an impairment or combination of impairments is deemed to be severe at step two if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1522(a). An impairment or combination of impairments may be found "not severe *only if* the evidence establishes a slight abnormality that

has no more than a minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (cleaned up).  "Step two is merely a threshold determination meant to screen out weak claims." Buck v. Berryhill, 869 F.3d 1040, 1048-49 (9th Cir. 2017); see Smolen, 80 F.3d at 1290 ("the step-two inquiry is a de minimis screening device to dispose of groundless claims" (cleaned up)).

Because plaintiff alleged that he was disabled, at least in part, due to mental impairment from depression and anxiety, the ALJ was required "to follow a special psychiatric review technique." Keyser v. Comm'r., 648 F.3d 721, 725 (9th Cir. 2011); 20 C.F.R. § 404.1520a(a) (in evaluating the severity of mental impairments, ALJs "must follow a special technique at each level in the administrative review process").  First, under this technique, the ALJ must first determine whether plaintiff has "a medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1).  Second, the ALJ must "rate the degree of functional limitation resulting from the impairment(s)" in four broad functional areas:  "[1] Understand, remember, or apply information; [2] interact with others; [3] concentrate, persist, or maintain pace; and [4] adapt or manage oneself."  20 C.F.R. § 404.1520a(b)(2), (c)(3).  The ALJ must rate the degree of limitation using a "five-point scale:  None, mild, moderate, marked, and extreme." Id. § 404.1520a(c)(4).  Third, the ALJ must use the ratings to determine the severity of the mental impairment.  If the degrees of limitation are rated as "none" or "mild," generally the impairment(s) will be found "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation" in the plaintiff's ability to do basic work activities.  20 C.F.R. § 404.1520a(d)(1).

**Analysis**

Plaintiff asserts multiple distinct errors in the ALJ's step-two analysis:  (1) that the ALJ did not consider plaintiff's mental impairment in combination with the physical impairments, and (2) that in finding plaintiff's mental impairment not severe, the ALJ (a) improperly relied on plaintiff's "improvement" and normal mental status exams and (b) impermissibly rejected plaintiff's treating psychiatrist's opinion. (ECF Nos. 15 at 5-9, 18 at 6.)  The court need not delve into each of plaintiff's arguments in detail, however, because it agrees with plaintiff's overall

1    position: that the ALJ applied an impermissibly high standard in assessing plaintiff's mental
2    limitations at step two.
3           Despite finding several other severe impairments, the ALJ determined that plaintiff's
4    depression and anxiety were not severe.  (AT 24-28.)  The ALJ found that plaintiff "does not have
5    a severe psychiatric impairment," first, based on the medical records and progress notes.  The
6    ALJ reasoned that these records showed (a) plaintiff's anxiety and depression was improving,
7    (b) plaintiff sometimes expressed that he preferred no changes to his psychiatric medications, and
8    (c) his mental status examinations frequently reflected that he was within normal limits.  (AT 26-
9    27.)  Second, the ALJ relied on the concurring opinions of the reviewing state psychiatrist and
10   psychologist that plaintiff had only mild limitations in mental functioning, and no episodes of
11   decompensation (AT 78-79, 92)—which the ALJ credited over the opinion of plaintiff's treating
12   psychiatrist, Dr. Richard Malek, who opined that plaintiff's mental limitations were totally
13   disabling[4] (AT 663-65).  (AT 27-28.)  The ALJ explained that he was giving "little weight" to Dr.
14   Malek's opinion because the doctor provided no supporting rationale for his opinion which the
15   ALJ found inconsistent with the record notes of improvement and plaintiff's normal mental status
16   exams.  (AT 27-28.)  Accordingly, the ALJ found plaintiff had only mild limitations in (1)
17   understanding, remembering, or applying information, (2) concentrating, persisting, or
18   maintaining pace, and (3) adapting or managing himself; and had no limitations in interacting
19   with others.  (AT 28.)  The ALJ concluded that "[a]ccordingly, the claimant's psychiatric
20   impairments do not satisfy the de minimis severity standards of 20 CFR 404.1520(c)."  (Id.)
21          Although the ALJ recited the proper "de minimis" step-two standard, it is clear that he did
22   not apply it.  See Smolen, 80 F.3d at 1290.  A psychiatric impairment may be found not severe
23   only if it is a slight abnormality with "no more than a minimal effect on an individual's ability to
24   work."  See Social Security Ruling ("SSR") 85-28; Yuckert v. Bowen, 841 F.2d 303, 306 (9th

---

[4] Dr. Malek opined that plaintiff had a "moderate" ability to relate to co-workers, deal with the public, interact with a supervisor, maintain his personal appearance, and relate predictably in social situations; "marked" limitations in being able to use good judgment and perform simple instructions; and "poor" ability to follow work rules, deal with work stress, function independently, maintain attention and concentration, perform detailed or complex job instructions, and demonstrate reliability.  (AT 663-65.)

1   Cir. 1988).  A "finding of no disability at step two" may be affirmed where there is a "*total*
2   *absence* of objective evidence of severe medical impairment." Webb, 433 F.3d at 688 (emphasis
3   added); see SSR 85-28 (if a finding of non-severity is not "clearly established by medical
4   evidence," adjudication must continue through the sequential evaluation process).

5         Rather than assessing whether there was any objective evidence of severe mental
6   impairment in the record, the ALJ rushed all the way forward to *weighing* the arguably mixed
7   evidence of plaintiff's depression and anxiety.  The record undeniably contains evidence that
8   plaintiff's depression and anxiety were more than a "slight abnormality." Cf. Webb, 433 F.3d
9   at 686 ("An impairment is not severe if it is merely a slight abnormality . . . that has no more than
10  a minimal effect on the ability to do basic work activities." (cleaned up)).

11        Throughout the claim period, plaintiff consistently was diagnosed by various providers
12  with major depressive disorder and generalized anxiety disorder for which he was prescribed a
13  variety of medications.  (See, e.g., AT 356, 382-84, 390, 402, 571, 709, 718.)  The record
14  contains at least three Patient Health Questionnaire-9 ("PHQ-9") scores reflecting severe
15  depression in June 2015 (AT 384) and moderately severe depression in March and May 2017 (AT
16  720-22, 725-27).  In May 2017, plaintiff also recorded a Global Assessment of Functioning
17  ("GAF") score of 60—consistent with "moderate difficulty in social, occupational, or school
18  functioning," Garrison v. Colvin, 759 F.3d 995, 1003 n.4 (9th Cir. 2014).  (AT 718.)  At an initial
19  appointment with a new doctor in March 2017, the doctor assessed plaintiff as having "Recurrent
20  major depressive disorder, in partial remission," but noted that plaintiff's "symptoms are clearly
21  still severe" and referred him to the clinic's Behavioral Health team for evaluation and treatment.
22  (AT 728.)  The court could go on, but even this evidence alone should have been found sufficient
23  to show a level of impairment that at least meets the de minimis threshold at step two. Smolen,
24  80 F.3d at 1290.

25        Further, the existence of contradictions between the opinions of consulting state-agency
26  mental health physicians and a treating psychiatrist is not a proper basis for rejecting a mental
27  impairment *at step two*.  The detailed weighing of testimony and contradictory opinion evidence
28  that the ALJ undertook is meant to occur at step four of the sequential process, in assessing RFC,

rather than determining whether the de minimis step-two showing was made.  See Kang Jin v. Berryhill, 2020 WL 999795, at *2 (N.D. Cal. Mar. 2, 2020) (reversing and remanding where ALJ ended disability analysis at step two after weighing opinion evidence and making credibility findings).

Without opining on whether the ALJ's reasoning in this early portion of his decision might be upheld had it been conducted as part of determining plaintiff's RFC,[5] the undersigned can confidently conclude that the ALJ applied a far more stringent legal standard than is called for at step two.  And this error of co-mingling the step-two and step-four levels of inquiry was not harmless because the ALJ failed to consider plaintiff's mental impairments at later steps in the disability analysis.  See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).  The ALJ considered none of the limitations imposed by plaintiff's mental impairments in his RFC determination.  (See AT 29-31.)  Accordingly, remand is required for the ALJ to consider the degree to which plaintiff's severe mental impairments should be reflected in his RFC.  See Vasquez v. Astrue, 572 F.3d 586, 596 (9th Cir. 2009) (remanding for further proceedings where evidence suggested that plaintiff had severe mental impairment and where impairment was not accounted for in RFC determination at step four).

### B. Step Five Job Numbers

**Legal Standard**

"At step five, the burden shifts to the agency to prove that the claimant can perform a significant number of other jobs in the national economy."  Ford v. Saul, 950 F.3d 1141, 1149 (9th Cir. 2020).  The Commissioner must demonstrate that the claimant can perform "substantial gainful work" that exists "in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. § 423(d)(2)(A); see Gutierrez v. Comm'r, 740 F.3d 519, 523-25 (9th Cir. 2014).  "To meet this burden, the ALJ may rely on . . . the testimony of

---

[5] The court will note, however, its agreement with plaintiff that the ALJ's reliance on vague references to the "improvement" of his mental health scattered across plaintiff's subjective reports to his clinicians is not a persuasive reason to rule out any mental limitation, given that plaintiff still had "severe" symptoms even beyond the end of his disability coverage period.  (See AT 728.)

8

a vocational expert." Ford, 950 F.3d at 1149.  If substantial evidence shows the number of jobs at either the regional or national level was significant, the ALJ's decision must be upheld.  Beltran v. Astrue, 700 F.3d 386, 389-90 (9th Cir. 2012).  Nationwide figures necessarily require a greater total to constitute a "significant" number, as the jobs exist across "several regions" of the country.  See id.

**Analysis**

Here, the vocational expert ("VE") testified that a person with the RFC ultimately assigned to plaintiff—light duty with only occasional handling and fingering—could not perform plaintiff's past work as a tile-setter, but that there were "some," "very few" other occupations such person could perform.  (AT 57.)  The VE identified three representative occupations: (1) "investigator of dealer accounts" (DOT 241.367-038), for which 6,900 jobs exist nationally; (2) "school bus monitor" (DOT 372.667-042), for which 8,300 jobs exist nationally; and (3) "usher" (DOT 344.677-014), for which 10,200 jobs exist nationally.  (AT 57.)  The VE did not testify as to the availability of any of these jobs in plaintiff's region.

However, the VE testified without prompting that the number of usher jobs "would have to be eroded . . . . by two-thirds" to account for the number of part-time positions—agreeing with the ALJ that would leave approximately 3,400 full-time usher jobs (of the 10,200 first cited) available nationwide.  (AT 58.)  On cross-examination by plaintiff's counsel, the VE further testified about the part-time erosion for the other two occupations.  (AT 64-69.)  For the investigator position, the VE stated that 18% were part-time only, meaning 1,242 jobs should be subtracted.  (AT 65.)  Although the VE did not testify to the resulting eroded total, the Commissioner agrees that this would leave 5,658 full-time investigator jobs of the 6,900 first identified.  (ECF No. 17 at 9, 18 n.5.)  For the school bus monitor position, the VE stated—with several starts and stops in the dialogue—that 65% were part-time only, meaning there were 2,862 full-time school bus monitor positions (of the 8,300 first cited).  (AT 67-69.)

In the decision, however, the ALJ inaccurately and incompletely described the VE's—admittedly difficult to follow—job numbers testimony.  According to the ALJ, the VE testified that an individual with plaintiff's vocational factors and RFC would have been able to perform

representative occupations such as:

- investigator of dealer accounts . . . , for which 6,900 positions exist nationally;
- school bus monitor . . . , for which 8,200 [sic] positions exist nationally; and
- usher . . . , for which 3,400 positions exist nationally.

(AT 33 (omitting DOT specifications for each).) The ALJ did not include an aggregate sum of these positions in the decision, but concluded that "[b]ased on the [VE]'s testimony," plaintiff could perform work that existed in significant numbers in the national economy through the date last insured—and thus was not disabled. (Id.)

This factual finding must be reversed for lack of substantial evidence, due to the ALJ's misrepresentation of the VE evidence on which he supposedly relied. First, the ALJ misreported the total number of school bus monitor positions nationwide as 8,200—instead of the 8,300 the VE originally cited. (AT 57.) More troublingly, however, the ALJ totally failed to acknowledge the VE's testimony about part-time erosion. And the nationwide numbers the ALJ recites for each position are internally inconsistent in that the ALJ recites the eroded 3,400 number of usher positions but recites the *non*-eroded numbers for the other two occupations. (AT 33.) The numbers stated in the ALJ's decision do not reflect that some two thirds (65%) of the school bus monitor positions were only part-time and the same was true of 18% of the investigator positions; although, the ALJ seems to have found part-time erosion warranted, at least in theory, given that he recited the eroded number of usher jobs—excluding the two thirds of usher positions that were only part-time. Thus, the court is left uncertain as to the basis for the ALJ's conclusion that there was "other work that existed in significant numbers in the national economy." (AT 33.) See 20 C.F.R. § 404.1560(c)(2) ("In order to support a finding that you are not disabled at this fifth step of the sequential evaluation process, [the Commissioner is] responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do, given your [RFC] and vocational factors.").

At such low starting numbers, it is particularly important to ensure that the ALJ understood and factored in the significance of the part-time erosion reported by the VE. Even

1  before accounting for part-time positions, the VE's testimony only established some 25,400 jobs
2  available to plaintiff *nationally* (6,900 + 8,300 + 10,200). (AT 57.)  That tally falls just above the
3  lowest number the Ninth Circuit has ever upheld as "significant" in a published decision (where
4  part-time erosion was not at issue).  See Gutierrez, 740 F.3d at 529 (concluding that 25,000
5  nationwide jobs was significant number, though a "close call").  The Commissioner argues here
6  that, even assuming the ALJ should have relied only on the full-time job numbers, that eroded
7  aggregate of 11,920 jobs nationwide (5,658 + 2,862 + 3,400) qualifies as a significant number.
8  (ECF No. 17 at 18-20; see AT 58, 64-65, 67-69.)  The undersigned cannot so readily agree,
9  having recently held that 10,000 jobs nationwide is not a significant number.  Shade v. Comm'r,
10 No. 2:19-CV-1122-KJN, 2020 WL 2556753, at *4 (E.D. Cal. May 20, 2020) (relying on
11 persuasive, though unpublished, recent Ninth Circuit cases).

12       More importantly, though, the ALJ made no such finding, himself.  As written, the
13 decision indicates only that the ALJ (erroneously) believed the VE had testified to 18,500 total
14 positions (6,900 + 8,200 + 3,400) without regard to their full-time versus part-time availability.
15 (AT 33.)  There is no indication whether the ALJ would find 11,920 nationwide jobs a significant
16 number.  See Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018) ("A reviewing court may
17 only consider the reasons provided by the ALJ in the disability determination and may not affirm
18 the ALJ on a ground upon which he did not rely." (cleaned up)).  Whether a given number of jobs
19 is significant is a factual determination for the ALJ to make in the first instance.  See Gutierrez,
20 740 F.3d at 527-28 (courts defer to ALJ's "supported finding that a particular number of jobs" is
21 significant) (citing, *inter alia*, Martinez v. Heckler, 807 F.2d 771, 775 (9th Cir. 1986)).  The
22 ALJ's only factual determination on the significance of the job numbers here is not supported by
23 substantial evidence.  Accordingly, on remand, the ALJ must reconsider whether other work is
24 available to plaintiff in the national economy, and—if he determines that it is—make a clear
25 record of the basis for so finding.[6]

---

[6] Given the ambiguity of the record, the undersigned need not presently resolve the lurking legal question of whether the Commissioner can rely on the availability of part-time jobs to satisfy his step five burden to show that there is other "substantial gainful work" plaintiff can do that exists "in significant numbers." 42 U.S.C. § 423(d)(2)(A).  Courts have come out in various ways on

1    Of course, reconsideration of plaintiff's ability to adjust to other work may be required in
2    any event, if the ALJ determines that a more limited RFC is warranted after accounting for
3    plaintiff's severe mental impairments, as discussed above. Should the RFC remain the same,
4    however, this step-five analysis is intended to inform the ALJ's approach.

### C. Additional RFC Observation

One additional point is worth mentioning here. Plaintiff briefly argues that the ALJ erred by failing to include a "reaching" limitation in both his RFC and the hypotheticals posed to the VE. (ECF No. 15 at 10-11.) Plaintiff bases his argument on a notation in the disability evaluation prepared by the consultative examiner, Dr. Jay Keystone, that plaintiff's "abduction of the shoulders was limited to 100 degrees bilaterally. He could not fully abduct his arms." (AT 563; see AT 560 (plaintiff reporting that "reaching above 90 degrees is difficult").)

Dr. Keystone indeed noted plaintiff's restricted shoulder abduction (movement away from the body's midline) in the Musculoskeletal section of his physical exam observations. (AT 563.) However, the closing "Physical Limitations" section of Dr. Keystone's evaluation does not include a place to specify any limitations in "reaching." (AT 564-65 (reflecting headings only for "Pushing, pulling, lifting and carrying"; "Standing and walking"; "Sitting"; "Activities requiring agility"; "Use of hands, fine and gross manipulation"; "Postural limitations"; "Hearing and seeing"; and "Environmental limitations").) Thus, it appears that Dr. Keystone gave no formal opinion that plaintiff was limited in this regard.

The ALJ briefly acknowledged Dr. Keystone's notation of plaintiff's "limited shoulders and lower extremities range of motion" when fashioning the RFC, and stated that he gave Dr. Keystone's overall opinion "great weight." (AT 30.) Yet, the ALJ did not incorporate any "reaching" limitations into the RFC, or explain why such a limitation was not warranted. On remand, the ALJ should also address whether Dr. Keystone's observation of restricted shoulder abduction should translate to any sort of "reaching" limitation in the ultimate RFC, and if not,

---

this question, which the Ninth Circuit has not yet answered and which is not addressed in the applicable regulations. See generally Jaquez v. Saul, 2019 WL 4387327 (S.D. Cal. Sept. 13, 2019), rev'd and remanded, No. 19-56235, 2021 WL 1034959 (9th Cir. Mar. 17, 2021) (unpub.).

should state why not.

Given that remand is required to address the defects identified in the ALJ's step-two and step-five analyses, the undersigned does not rule on plaintiff's assertion of additional error in considering the testimony provided by plaintiff and his family members.

## V.   CONCLUSION

In sum, the evidence shows mental impairments that qualify as severe at step two, but which might or might not prevent plaintiff from performing other work in the national economy; and even under the current RFC, the ALJ's finding as to the availability of other work is not supported.  Thus, the case must be remanded for further evaluation in accordance with the five-step sequential process.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is GRANTED;
2. The Commissioner's motion for summary judgment (ECF No. 17) is DENIED;
3. The Commissioner's final decision is REVERSED and REMANDED for further proceedings consistent with this opinion; and
4. The Clerk of Court shall enter judgment for plaintiff and CLOSE this case.

Dated:  March 23, 2021

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

few.1491